## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**TERRY SORAH,**

                **Petitioner,**             **CIVIL ACTION NO. 04-CV-72422-DT**

    **vs.**

                               **DISTRICT JUDGE JOHN CORBETT O'MEARA**

**DEBORAH SERVITTO,**          **MAGISTRATE JUDGE MONA K. MAJZOUB**
**et al.,**
                **Respondents.**
_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:** This Court recommends that Petitioner's Petition for Writ of

Habeas Corpus be DENIED.

**II.**    **REPORT:**

*A.*    *Procedural History*

      A jury convicted Petitioner of burning real property and burning insured property, his family-

operated auto paint and body shop. The trial court sentenced him on March 17, 2000 to five years of

probation and to pay restitution of $222,961.84. On April 26, 2000 Petitioner filed a claim of appeal

and a motion challenging his sentence with respect to the amount of restitution. On August 23, 2000

Petitioner filed a motion for directed verdict of acquittal or for new trial. On July, 9, 2001 the trial court

denied the motions as untimely.

      Petitioner appealed as of right the trial court's order denying the motion for new trial. The

Michigan Court of Appeals found that it did not have jurisdiction and dismissed the appeal because the

order was not appealable as of right. The Michigan Supreme Court denied Petitioner's application for

leave to appeal the decision of the Court of Appeals.

Petitioner also appealed his conviction and sentence. He claimed that: (1) the trial court erred in failing to grant a directed verdict as to arson of insured property; (2) convictions for his two offenses violated the Double Jeopardy Clause; (3) the trial court erred in denying his motion for directed verdict based on a lack of evidence that he intentionally set the fire; (4) ineffective assistance of counsel because counsel stipulated to a fire investigator being an expert witness; (5) he was denied due process by the trial court's reliance upon an inaccurate presentence report and the court's denial of a hearing on the restitution amount; and (6) the prosecutor committed misconduct in several ways. Petitioner moved in the court of appeals for a remand to the trial court for it to conduct a hearing on his ineffective assistance of counsel issues. The court denied the motion. On November 26, 2002 the court of appeals affirmed Petitioner's convictions but remanded the issue of restitution. The Michigan Supreme Court denied Petitioner's application for leave to appeal on June 30, 2003.

Petitioner then filed this habeas corpus petition claiming that he received ineffective assistance of counsel because counsel: (a) stipulated to the fire investigator being an expert; (b) failed to interview or present potential witnesses; (c) failed to introduce the insurance policy; (d) failed to request a foundation as to who accepted the claim at the insurance office and offer proof that Petitioner never filed a claim; (e) failed to inform Petitioner of the possible restitution obligation and advise the court that the damages provided were only estimates; (f) failed to raise the double jeopardy issue; and (g) the state courts failed to remand for an evidentiary hearing. Petitioner also claims that his convictions violated the Double Jeopardy Clause, he was denied due process by the ruling of the Michigan Court of Appeals that the denial of his motion for new trial was not appealable as of right, the trial court erred in denying his motion for a directed verdict based on the lack of evidence that the fire was intentionally set, and the court of appeals erred in finding that he had waived his restitution amount issue and that he had not raised a factual question regarding the amount of restitution.

-2-

Respondents have responded to the petition, addressed the merits of the claims, and ask that the petition be denied.  Petitioner did not submit a reply brief.

B.      *Factual Background*

The Court of Appeals of Michigan summarized the evidence against Petitioner as follows:

> At trial, witnesses testified that defendant left the burning building as though nothing was wrong, and that he seemed calm. Afterwards, defendant gave conflicting statements about what had happened.  When first questioned by the police, defendant said that he had recently locked up the building and left and, when he was driving back, he noticed police cars and smoke.  He stated that he had returned from the bank and was doing some paperwork when a door suddenly blew open, and pop cans and papers went flying.  Defendant said he left because the reception area became too hot to call 911.  Later, after a preliminary finding of arson was made, defendant stated for the first time that he accidentally spilled some paint thinner.
>
> Arson investigators determined that the damage to the building was excessive in relation to the duration of the fire.  Additionally, there was evidence of three unconnected points of origin, including one inside a plastic garbage can.  Some samples tested positive for an accelerant.  No accidental source of ignition was identified.  Further, contrary to defendant's accidental spill theory, there was no trail connecting the various burned areas to each other.

*People v. Sorah*, No. 226916, slip op. at 2 (Mich. Ct. App. Nov. 26, 2002).

C.      *Standard of Review*

Because Petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Among other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

-3-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

D.     *Ineffective Assistance of Counsel Claims*

    1.     *Stipulation of expert witness*

Petitioner's first grounds for relief allege ineffective assistance of counsel.  He  claims that counsel improperly stipulated to the fire investigator being an expert witness because he was interested and partial and did not meet the *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993) standard for admission of scientific testimony.  The Michigan Court of Appeals addressed this issue and found no merit in it.  Therefore, this Court must review that decision according to the standard set out above. The Michigan Court of Appeals found as follows:

> We disagree with defendant's claim that counsel was ineffective for stipulating to Detective Stayer's status as an expert.  Under MRE 702, an expert may be qualified by virtue of his knowledge, skill, experience, training, or education. *Bouverette v. Westinghouse Elec Corp*, 245 Mich App 391, 400; 628 NW2d 86 (2001).  On appeal, defendant does not argue that Detective Stayer lacked appropriate education, training or experience.  Rather, he argues that Detective Stayer's expert opinion that the fire was an arson fire was improperly based solely on his failure to find an accidental cause for the fire, which defendant maintains does not comport with generally accepted methodologies for investigating fires.  Contrary to what defendant argues, this was not the sole basis for Detective Stayer's opinion.  Further, "an opposing party's disagreement with an expert's opinion or interpretation of facts, and gaps in expertise, are matters of the weight to be accorded to the testimony, not its admissibility." *Id.* at 401.    Thus, defendant's disagreement with Detective Stayer's opinions did not provide a basis for excluding his testimony under MRE 702.  Defendant has failed to show that defense

counsel acted unreasonably in stipulating to Detective Stayer's expert
qualifications.

*People v. Sorah*, slip op. at 3 (footnote omitted).  In the footnote omitted from the above quotation the
court of appeals declined to address the applicability of *Daubert*.

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel
protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To
establish ineffective assistance of counsel, Petitioner must show that: (1) counsel's errors were so serious
that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;"
and (2) counsel's deficient performance prejudiced the defense.  *See id.* at 687.  These two components
are mixed questions of law and fact.  *See id.* at 698.  Further "there is no reason for a court deciding an
ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an
insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an ineffectiveness claim on the
ground of lack of sufficient prejudice, . . . that course should be followed."  *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that
counsel's behavior lies within the wide range of reasonable professional assistance.  *See id.* at 689; *O'Hara
v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[Petitioner] must overcome the presumption that, under
the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S.
at 689 (citations omitted).  "[T]he court should recognize that counsel is strongly presumed to have
rendered adequate assistance and made all significant decisions in the exercise of reasonable professional
judgment."  *Id.* at 690.  With respect to the prejudice prong of the *Strickland* test, the ultimate inquiry
is "whether there is a reasonable probability that, absent [counsel's] errors, the factfinder would have
had a reasonable doubt respecting guilt."  *Id.* at 695.

Petitioner's argument to the Michigan Court of Appeals is shown in the record by his appellate
brief, reply brief, and brief supporting his motion to remand for an evidentiary hearing.  Petitioner's

-5-

arguments on this issue were reasonably summarized by the court of appeals. He did not argue that Detective Stayer lacked appropriate education, training or experience. As the court found, Petitioner did contend that determining arson by ruling out accidental causes is not scientifically accepted methodology. Petitioner argued that counsel should have inquired into Detective Stayer's credentials in front of the jury, but did not contend or show that his qualifications were in fact deficient in any way. Furthermore, although Petitioner argued that an expert must be disinterested and impartial and that Detective Stayer was not, the parenthetical holdings of the cases Petitioner cited to the court of appeals required these qualities for the experts who were determining whether the specific methodology used had achieved general scientific acceptance for reliability. *See People v. Young*, 418 Mich. 1, 340 N.W.2d 805 (1983). This is a different matter from requiring that the expert testifying as to the results of his investigation using a certain methodology be disinterested. Based upon the arguments Petitioner made to the court of appeals, this Court cannot find that the court of appeals unreasonably found any facts or that its decision was contrary to or involved an unreasonable application of the *Strickland* standard.

       2.       *Interviewing and calling lay witnesses*

      Petitioner's next argument is that counsel rendered ineffective assistance by failing to interview and call lay witnesses at trial. He names the potential witnesses as Ms. Gallagher whose testimony would allegedly have corroborated Petitioner's accidental spill theory, Petitioner himself, Jerry Erlich who would have testified as to Petitioner's reputation for veracity and community service work, Paul Johns who allegedly would have testified that he was interested in buying Petitioner's MAACO franchise, and Lisa Cardenali, the Sorahs' accountant who allegedly would have testified that the business's earnings were increasing and that the Sorahs depended on the business for work and for health insurance. Petitioner also names John Dombrowski and Gary Oakie who allegedly would have testified that Petitioner was upset but controlled when he called 911 and that Petitioner had told Oakie that after he

returned to the shop, the door blew open and there was smoke, so he left.

> The Michigan Court of Appeals addressed this issue as follows:

>> Defendant also claims that counsel was ineffective for failing to call character witnesses who would have testified as to his reputation for veracity and charitable works, or to present evidence of his recent investments in the business, his profit and loss history, and his family's dependence on the business. However, "[c]ounsel's failure to call witnesses is presumed to be trial strategy." *People v Mitchell*, 454 Mich 145, 163; 560 NW2s [sic] 600 (1997).

*People v. Sorah*, No. 226916, slip op. at 3-4.

Petitioner's brief to the court of appeals reveals that he did argue that counsel failed to call character witnesses. There was no mention of a failure to investigate. He named the witnesses as himself, Lisa Gallagher, Paul Johns and Jerry Erlich. Petitioner's affidavit submitted to the state court recounted the events of the day of the fire. In his affidavit, Paul Johns states, in addition to general statements of good character, that Petitioner was aware of his efforts to buy another MAACO franchise, but Petitioner never mentioned wishing to sell his franchise. Jerry Erlich's affidavit contains statements of Petitioner's good character as well. Lisa Gallagher states that she is the step-daughter of Petitioner and talks about the events of the day of the fire and that they lost some family momentos in the fire. Elisabeth Cardinali said in her affidavit that she knew about the financial shape of the business including that the Sorahs were making payments to the IRS to clear debt from back taxes and to Mr. Francis for the purchase of the business, and that although the business had lost money in the years up to and including 1995, the amount of sales increased from 1994 to 1995.

Based upon these arguments, the court of appeals reasonably considered Petitioner's claim to be that counsel rendered ineffective assistance by failing to call, rather than also investigate, these witnesses. The court found that Petitioner had not rebutted the presumption that counsel's action of not calling these witnesses was the result of trial strategy. This presumption was established in *Strickland*,

-7-

466 U.S. at 690.  The most damaging evidence from the state that counsel had to try to rebut was that from the fire investigator.  Counsel met this evidence with an expert of his own.  Counsel reasonably could have believed that the testimony of Elisabeth Cardinali would have done more harm than good because of her statements regarding the many debts that Petitioner owed.  He could have reasonably believed that character witnesses would not have likely changed the outcome for Petitioner.  The testimony of Paul Johns, that Petitioner never hinted that he might wish to sell his franchise, could reasonably be considered tangential to the real issue of the case.  A desire by Petitioner to retain his franchise is not necessarily inconsistent with a desire to rid himself of the building and recover some money in the process.  There is also no evidence as to how much Johns might have been willing to pay and whether he was only interested in the franchise or both the premises and the franchise.  Petitioner and his step-daughter would not be unbiased witnesses.  Petitioner's story of what happened that day had come out at trial even without his testimony, and his step-daughter's affidavit reveals no real corroboration for Petitioner's story that he accidentally spilled solvent on the floor of the business which caused the fire.  In sum, this Court cannot conclude that the Michigan Court of Appeals unreasonably found any facts or that its decision was contrary to or involved an unreasonable application of the *Strickland* standard.

   3.     *Eliciting details regarding Petitioner's insurance claim*s

   Petitioner next alleges that counsel performed deficiently by failing to elicit a foundation as to who at the insurance agency accepted the alleged claim made by Petitioner and failed to prove that Petitioner did not file a claim.  Petitioner raised this claim in passing in the court of appeals in his motion for remand for an evidentiary hearing.  He raised the issue in the manner of an insufficient evidence claim in his original appellate brief.  In connection with these issues, Petitioner submitted an insurance form he signed which was entitled "Authorization to Obtain Information" and which listed

-8-

a claim number and date of loss and authorized the insurance company to investigate the claim. There was testimony at trial from an insurance agent, Mr. MacNeill, that Petitioner had filed a claim on his policy. Petitioner has not shown that this testimony is incorrect. Therefore, he has failed to show that counsel acted unreasonably by failing to prove that Petitioner did not file a claim. Counsel's alleged failure in not having a specific person identified as receiving the report of the claim was not unreasonable given the above information.

       4.     *Introduction of insurance policy*

Petitioner's next claim is that counsel failed to introduce the insurance policy to show that the Sorahs would have been entitled to little or no money. Petitioner raised this claim in his original appellate brief to the court of appeals. It disposed of the claim in finding that it involved matters of trial strategy which the court would not second-guess with the benefit of hindsight. Petitioner has failed to explain how the insurance policy would have shown that the Sorahs would have been entitled to little or no money. Petitioner concedes in his brief in this Court that he had a commercial insurance policy with coverage of $500,000 on the building, $150,000 on business personal property, and $250,000 on business interruption. The insurance agent testified that the $500,000 in coverage would be paid out to Petitioner's landlord. However, Petitioner admits in his brief in this Court that he would have been reimbursed up to the $150,000 limit for business personal property, and from the testimony of the insurance agent at trial it is clear that Petitioner would receive any payment made due to business interruption. Petitioner has not shown in this Court that he would have been entitled to little or no money. Counsel could have reasonably believed that it was better not to show the actual policy to the jury. The Michigan Court of Appeals did not unreasonably find any facts or render a decision contrary to or involving an unreasonable application of the *Strickland* standard on this issue.

       5.     *Informing of restitution obligation and providing financial information*

-9-

Petitioner next contends that counsel failed to inform him of the potential restitution obligation, failed to advise the court that the damages provided at sentencing were only estimates, failed to effectively cross-examine witnesses, and failed to otherwise prepare for trial or investigate Petitioner's case. Petitioner argued to the Michigan Court of Appeals that counsel failed to inform him of his restitution obligation and to prepare for that phase of trial and failed to effectively cross-examine Inspector Glancy and Detective Stayer and otherwise prepare for trial. The court of appeals found as follows regarding these claims:

> Similarly, counsel's cross-examination of Detective Stayer is presumed to be a matter of trial strategy entrusted to counsel's professional judgment. *People v. Flowers*, 222 Mich App 732, 737; 565 NW2d 12 (1997). In light of the record, including Mr. Trenkle's testimony [Petitioner's expert], defendant has failed to overcome the presumption of sound strategy, nor has he shown that counsel's alleged deficiencies in impeaching Detective Stayer affected the outcome by, for example, depriving defendant of a substantial defense. *Id.* at 737; see also *People v. Daniel*, 207 Mich App 47, 58; 523 NW2d 830 (1994). Defendant's remaining allegations of ineffective assistance involve matters of trial strategy, which we will not second-guess with the benefit of hindsight. See *LaVearn*, *supra* at 216.

*People v. Sorah*, No. 226916, slip op. at 4.

Petitioner faults counsel for not providing the trial court with more financial information and suggests that his total restitution amount or his monthly payment of $125 toward restitution could have been lower. Petitioner's presentence report prepared for the sentencing hearing shows his monthly income of $1700 from his railroad retirement and his only asset as his family home valued at $75,000. His liabilities are listed as a Sears charge card with balance of $1537, a mortgage of $51,950, and a balance with LAP One (possibly intended to be Cap One) of $654. The report notes that these liabilities do not include the normal monthly expenses such as for electricity and food. His budget presented to the court of appeals showed his monthly income of $1737. It also showed his mortgage of $70,802, his Sears card balance of $1287 and Cap One balance of $1601. Petitioner lists separately his normal

-10-

expenses in his budget presented to the court of appeals and that listing shows that his monthly expenses are more than his income. These two sets of figures fail to show any great disparity between the information the trial court used to set Petitioner's restitution payments and the expenses Petitioner now contends counsel should have presented. Petitioner has not presented to this Court any evidence that the figures he presented to the court of appeals are more accurate than those in the presentence report. Accordingly, this Court cannot find that the Michigan Court of Appeals unreasonably found any facts or unreasonably applied the *Strickland* standard in denying this claim.

      *6.*     *Cross-examination of Inspector Glancy*

Petitioner next faults counsel for not effectively cross-examining Inspector Glancy. Petitioner argues that counsel should have asked whether the door to the paint room was up to code and would have inhibited the flowing of the spill from the 55 gallon drum. The transcript shows that counsel questioned Inspector Glancy and had him confirm that the room should have been built so that no liquids could have escaped from it and that Glancy failed to determine whether the proper floor moulding or lips were present to prevent this from occurring. Counsel later in the trial through his own expert would show that the expert conducted an experiment where liquid flowed under the door and through the walls, proving that the room was not built properly. Thus, counsel questioned Glancy as far as he could on the subject, and his decision to show that the room was not up to code through the expert was certainly not unreasonable. The Michigan Court of Appeals therefore properly found that counsel's questioning was a case of trial strategy which did not establish ineffective assistance of counsel.

      *7.*     *Cross-examination of Detective Stayer*

Petitioner also contends that counsel failed to effectively cross-examine Detective Stayer. The transcript shows, especially in light of counsel's presentation of his expert witness, Mr. Trenkle, that counsel's questioning of Detective Stayer was a product of trial strategy as the court of appeals found.

-11-

The record fully supports the finding of the court of appeals of a lack of prejudice on this issue, as well. Petitioner has failed to show error on the part of that court on the issue.

        8.      *Failing to communicate and prepare for trial*

      Petitioner concludes this ground for relief with general allegations of counsel's deficient conduct by failing to communicate effectively or otherwise prepare for trial. The Michigan Court of Appeals found that Petitioner had failed to overcome the presumption of reasonableness on the record presented to it. Petitioner's argument to the court of appeals was much less detailed than his argument to this Court. In the state court Petitioner focused on the fact that counsel had spent only four hours with Petitioner preparing for trial. Although most attorneys would likely mention a possibility of having to pay restitution, because Petitioner was not pleading guilty to the charges this Court does not find that alleged failure to be unreasonable conduct by counsel. Based on the presentation made to the state court, this Court cannot find that the court of appeals' ruling was unreasonable in any way or contrary to *Strickland.*

**E.**     *Double Jeopardy/Ineffective Assistance of Counsel Claim*

      Petitioner presents his double jeopardy claim as one that also shows ineffective assistance of counsel; therefore the Court will address the issue here. If the underlying claim of a double jeopardy violation has no merit, counsel did not perform unreasonably in not objecting on that basis. The Michigan Court of Appeals found that Petitioner's convictions for both arson of real property and arson of insured property did not violate the Double Jeopardy Clause. That court looked to the rationale of *People v. Ayers*, 213 Mich. App. 708, 716-21; 540 N.W.2d 791 (1995). In that case, the court found that dual convictions for arson of a dwelling and arson of insured property did not constitute double jeopardy because the statutes prohibiting the conduct were aimed at deterring conduct affecting distinct social norms. In *Ayers*, the court of appeals specifically rejected the state case Petitioner relies upon,

*People v. Hanna*, 85 Mich. App. 516; 271 N.W.2d 299 (1978), finding that the Michigan Supreme Court had abrogated the type of analysis that *Hanna* employed in deciding double jeopardy questions.

Petitioner contends that the test announced in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), should guide the analysis of this issue. However, the *Blockburger* test is not used in habeas cases if the state courts have already clearly explained the legislative intent on the statutes at issue. *Banner v. Davis*, 886 F.2d 777, 781-82 (6th Cir. 1989). The question of whether multiple punishments violate a defendant's double jeopardy rights is essentially one of legislative intent. *Ohio v. Johnson*, 467 U.S. 493, 499 (1984). Such is the case here. The Michigan courts have said that the statutes at issue are aimed at preventing different types of conduct. This Court is bound by that determination of state law. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Therefore, the Michigan state court's determination does not show an unreasonable application of Supreme Court cases. Accordingly, there is no merit to either Petitioner's substantive double jeopardy argument or his contention that counsel rendered ineffective assistance on the issue.

F.     *State Court's Refusal to Provide Evidentiary Hearing*

Petitioner's contention that the state courts erred by refusing to remand his case for an evidentiary hearing on his ineffective assistance of counsel claims does not merit habeas relief. This Court may not second-guess a state's application of its own rules. *See Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). The question for this Court is, rather, whether the state courts properly denied relief on the ineffective assistance claims.

G.     *State Court's Denial of Motion for New Trial*

Petitioner next argues that his due process rights were violated by the Michigan Court of Appeals' holding that the trial court's order denying his motion for new trial was not appealable as of right. Petitioner asks that this Court hold that the order denying his motion for new trial was a final

-13-

order under Mich. Ct. R. 7.202(7)(b)(ii). This is a request again for this Court to review a state court's application and construction of its own rule. This Court may not do so. *Allen*, 845 F.2d at 614. Petitioner has not shown that he had no avenue for review of the decision, such as through a motion for leave to appeal, and therefore has failed to show a denial of due process. Petitioner's contention that the court of appeals erred in holding that his motion for new trial was not timely also presents an issue of state law and procedure that is not cognizable in this action. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

H.    *Insufficient Evidence*

Petitioner next contends that insufficient evidence supports his convictions. Specifically, he argues that there was no evidence that he intended to defraud or cheat the insurer, an element of arson of insured property. Sufficient evidence supports a conviction if, after viewing the evidence in the light most favorable to the prosecution, the court can conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The Michigan Court of Appeals found:

> Here, there was evidence that defendant was approximately $20,000 behind in his rent and that a $2,000 check that he recently wrote to his landlord was returned because of insufficient funds. Although defendant was not the beneficiary of an insurance policy that covered the building itself, he purchased insurance coverage of $150,000 for the contents of the building and $250,000 for business interruption. Additionally, there was testimony in the record from which a reasonable juror could conclude that he filed a claim for these coverages two days after the fire. Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that defendant acted with an intent to defraud his insurance company.

*People v. Sorah*, No. 226916, slip op. at 2.

Petitioner contends that he only signed insurance forms that were completed by insurance company personnel, thus the company could not have been defrauded. However, as the court of

-14-

appeals found, there was evidence from which a jury could find an intent to defraud.  This included the testimony of the insurance agent, Mr. MacNeill, who said that Petitioner had filed a claim.  The state court's decision is neither unreasonable in any manner nor contrary to Supreme Court precedent.

Petitioner also argues that there was an absence of evidence of an intent to cause damage which is an element of both offenses.  The Michigan Court of Appeals found that although Petitioner questioned the weight and credibility of the evidence, "the evidence was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that defendant intentionally set the fire."  *Sorah*, slip op. at 2.  Some of the evidence that the court recounted in making this determination was the three unconnected points of origin of the fire and defendant leaving the building appearing as if nothing was wrong.  This Court finds no unreasonable determination of the facts or unreasonable application of the law by the state court.

I.      *Due Process and Cruel and Unusual Punishment*

Petitioner's final issue is that he was denied his constitutional rights of due process and to be free from cruel and unusual punishment when the Michigan Court of Appeals held that his restitution issue was waived and that Petitioner never raised a factual question concerning restitution.  The parties disagree on whether a petitioner may challenge in a habeas corpus petition the amount of restitution imposed by a state court.  Both parties rely on cases brought under 28 U.S.C. § 2255, however.  The Court does not find these cases controlling in this section 2254 proceeding due to the different statutory language involved and because in federal cases there are federal statutes which govern the imposition of fines and restitution, and these statutes do not apply to state courts.  Courts have considered in state habeas cases questions involving monetary payments such as fines.  *Girard v. Goins*, 575 F.2d 160 (8th Cir. 1978) (claim of denial of right to jury trial in light of severity of fines and sentences imposed); *Hirschfeld v. Arpaio*, 178 F.3d 1299 (9th Cir. 1999) (unpublished) (claim of fine being cruel and unusual

-15-

punishment).  Therefore, this Court will consider the issues.

Successful claims of a sentence being disproportionate in violation of the Eighth Amendment outside of the capital punishment realm "have been exceedingly rare." *Harmelin v. Michigan*, 501 U.S. 957, 963 (1991).  Petitioner is challenging the amount of restitution imposed which of course has a basis in the amount of damage sustained by a victim.  Thus, it seems a successful Eighth Amendment challenge to a restitution order should be even rarer than one involving a fine because a fine is more arbitrary.  Petitioner does not allege that the trial court lacked a basis for imposing restitution so much as he challenges the accuracy of the information the court relied upon.  This Court has already considered and rejected Petitioner's claim that counsel rendered ineffective assistance based on his performance during the sentencing hearing with respect to the restitution amount.  Petitioner focuses primarily on the difference between the amount of his mortgage that he initially reported to the court of $54,000, and the amount he now claims is correct of $70,000.

The Michigan Court of Appeals found that Petitioner had waived any challenge to the amount of loss because he had conceded at trial that the presentence report was accurate.  *People v. Sorah*, slip op. at 5.  The court also found that Petitioner did object to the amount of the monthly payment imposed, and that the trial court had agreed to reconsider the issue if more current financial information was submitted.  The court of appeals affirmed the restitution amount without prejudice to Petitioner filing a petition concerning the monthly amount of his restitution payments.  *Id.*  The court of appeals made this ruling on November 26, 2002, and Petitioner has not shown any effort after that date to file such a petition.

Petitioner has failed to show any unreasonable application of applicable federal law or any unreasonable determination of facts by the state court.  Petitioner has not shown that the court of appeals erred when it held that he had conceded that the presentence report was accurate.  In his motion

-16-

for leave to appeal to the Michigan Court of Appeals, Petitioner did not argue that the restitution amount lacked a basis in fact. Instead, he conceded that the amount of over $200,000 "may reflect the loss to the victim" although in this case the amount was overstated because the landowner built a larger building with insurance proceeds. *People v. Sorah*, No. 242508 (Mich. Ct. App. Oct. 7, 2002) (Defendant-Appellant's Application for Leave to Appeal, July 9, 2002, at 23). In this Court, Petitioner has not shown that the amount of restitution lacks a basis in fact. Therefore, the Court does not find any Eighth Amendment violation with respect to the restitution amount.

Petitioner has also failed to show any due process violation. A presentence report was prepared which discussed Petitioner's financial situation. As pointed out previously, the report listed fairly accurately Petitioner's assets and liabilities. The major point of contention is his mortgage amount. He has not shown in this Court that the mortgage amount is different from that reflected in the report, however. Even if he had, this difference would not amount to a due process violation. *See Lisenba v. California*, 314 U.S. 219, 236 (1941) (aim of due process is to prevent fundamental unfairness). This is especially so where the Michigan Court of Appeals dismissed without prejudice his claim regarding his monthly payment amount, and the record does not reflect any action by Petitioner after this order to modify the amount.

Accordingly, this Court recommends that Petitioner's application for the Writ of Habeas Corpus be DENIED.

## III.   <u>NOTICE TO PARTIES REGARDING OBJECTIONS:</u>

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932

F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: September 07, 2006                    s/ Mona K. Majzoub
                                             MONA K. MAJZOUB
                                             UNITED STATES MAGISTRATE JUDGE

**Proof of Service**

I hereby certify that a copy of this Report and Recommendation was served upon Terry Sorah and Counsel of Record on this date.

Dated: September 07, 2006                    s/ Lisa C. Bartlett
                                             Courtroom Deputy

-18-